IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DESIRAE CUNNINGHAM**<br>924 1st Avenue<br>Williamsport, PA 17701<br><br>*Plaintiff,*<br><br>vs.<br><br>**PENNSYLVANIA COLLEGE OF TECHNOLOGY**<br>One College Avenue<br>Williamsport, PA 17701<br><br>*Defendant.* | NO. _____<br><br>CIVIL ACTION<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, by and through her undersigned counsel, hereby makes the following allegations this Complaint against Defendant:

### INTRODUCTION

1. Plaintiff initiates this action to seek redress against Defendant, her former employer, for unlawful violations of Title VII of the Civil Rights Act ("Title VII") and other applicable law.

## PARTIES

2. Plaintiff is an adult individual currently residing at the above address.

3. Defendant is a public university located in Williamsport, Pennsylvania and is affiliated with The Pennsylvania State University with a principal place of business at the above address.

4. At all times relevant hereto, Defendant acted by and through its agents, servants, and employees, each of whom, at all times relevant, acted within the scope of her or her job duties.

5. Defendant is an "employer" within the meaning of Title VII because it is engaged in an industry affecting interstate commerce and because they maintained or maintain fifteen (15) or more employees for each working day in each of twenty (20) or more weeks in the current or preceding calendar year

6. Defendant also maintains sufficient employees to satisfy the jurisdictional prerequisites of the Pennsylvania Human Relations Act (requiring four or more employees).

## JURISDICTION and VENUE

7. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

8. The Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the Supreme Court of the United States in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

9. The United States District Court for the Middle District of Pennsylvania may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of civil rights.

10. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are

sufficiently related to one or more claims within the Court's original jurisdiction in that they form part of the same case or controversy.

11. Venue is properly laid in the Middle District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Defendant is located in and conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district (Plaintiff was employed in the Middle District of Pennsylvania at the time of the illegal actions set forth herein).

## PROCEDURAL and ADMINISTRATIVE REMEDIES

12. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

13. Plaintiff has satisfied the procedural and administrative requirements for proceeding with an action under Title VII.

14. Plaintiff filed timely written charges of discrimination with the Philadelphia office of the Equal Employment Opportunity Commission alleging discrimination and retaliation (No. 530-2012-03742 and 530-2011-2448).

15. Plaintiff's complaints were cross-filed with the Pennsylvania Human Relations Commission.

16. The instant action is timely because it is initiated within ninety ("90") days after the issuance of a Right to Sue letter(s) from the EEOC mailed on or about March 9, 2015.

17. Plaintiff has exhausted her administrative remedies as to the allegations of the instant Complaint.

## FACTUAL BACKGROUND

18. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

19. Plaintiff is a former employee of Defendant.

20. Plaintiff previously filed an EEOC complaint for gender discrimination and a sexual harassment at charge number is 530-2011-02448 against the Defendant ("the first charge").

21. After filing of the first charge in June of 2011, Plaintiff was subjected to retaliation.

22. In or around August of 2011, Plaintiff was brought in to Jenny Maurer's office and informed that she could not be more than one minute late to work or that she would be fired for insubordination.

23. Jenny Maurer ("Maurer") was an individual whom Plaintiff complained about in the first charge.

24. Further, Maurer informed Plaintiff that she was being placed on a "disciplinary track" and she informed Plaintiff that this could range from write ups to immediate firing for insubordination.

25. Plaintiff told Maurer that she had noticed many individuals arrive several minutes late and that she was keeping track of them because Plaintiff felt that the new attendance procedure was going to be used specifically as grounds to terminate Plaintiff.

26. Upon information and belief, Maurer's attitude in this regard was purely retaliatory because Plaintiff had filed the first charge and reported her to the Defendant for sexually harassing her and a female co-worker.

27. In or around early September 2011, Plaintiff met with Linda Morris ("Morris") in Employee Relations to report the retaliation.

28. Plaintiff told Morris that the rule Maurer wanted to enforce against her was not being enforced against others.

29. Plaintiff also mentioned that she was particularly uncomfortable with the one-on-one meetings with Maurer which she began to require.

30. Plaintiff told Morris that it was unfair to make her meet alone with the very person who sexually harassed her.

31. Plaintiff also complained to Morris that in one of her meetings with Maurer, she had told Plaintiff that she was the only person who took breaks and that she was no longer permitted to take them.

32. Upon information and belief, this was not the case as many other staffers took breaks and Maurer's rule was created and enforced only against Plaintiff because of her prior protected activity in filing the first charge.

33. After Maurer returned in August, she informed Plaintiff that if she went for coffee or to the bathroom she was not allowed to be away from her desk for more than five ("5") minutes at a time.

34. Upon information and belief, other employees took smoke breaks throughout the day and they were never disciplined or required to make up any time.

35. Plaintiff, however, was required to make up the time or she would be deemed "insubordinate" in which case she would have been terminated.

36. In or around the Fall of 2011 and the Spring of 2012, the Defendant employed or utilized a student who was trained to perform physical processing and minor book repairs ("the student").

37. The student was never scheduled to work in the processing department after Maurer returned, so Plaintiff had to take on that work.

38. Plaintiff brought up the student to Maurer on multiple occasions but nothing was ever done about it.

39. In this way, Plaintiff had to do the less desirable processing work and it took her away from her other job responsibilities which could not be performed by student workers.

40. In or around August and early September of 2011, Plaintiff requested to use flex time for a doctor's appointment.

41. This was a common practice and Plaintiff had always been permitted to do so ordinarily.

42. Upon information and belief, Maurer no longer allowed Plaintiff to use flex time for appointments.

43. Upon information and belief, Maurer's conduct was purely retaliatory because at the same time, and possibly in the same week, another employee, Mike Layton, was permitted to use flex time to go to his pregnant wife's doctor appointment.

44. In or around October of 2011, Plaintiff paid five dollars ("$5.00") to dress down in jeans to support in breast cancer awareness.

45. Maurer made Plaintiff print out a receipt to prove that she paid five dollars ("$5.00").

46. Maurer could just as easily have checked it online, but chose that particular way to harass and retaliate against Plaintiff.

47. Later in the month in or around October 2011, Maurer informed Plaintiff that her hours of pay would be cut and informed her that Penn College was using her as a scapegoat because of Plaintiff's first charge.

48. Plaintiff informed Maurer that she was concerned with the Defendant's discriminatory pay and hiring policies.

49. Maurer made it very clear that Plaintiff was "on the block" as a consequence of her first charge.

50. The harassment and retaliation did not stop.

51. In or around late October 2011, Plaintiff had to go away for her mandatory on campus fast track studies at the University of Pittsburgh where she was studying for a Master's Degree.

52. Plaintiff never had a problem asking for flex time before, but she got a sudden and hostile attitude when she requested the same.

53. Maurer's response to Plaintiff was demeaning and improper.

54. The next month, in or around November of 2011, only Plaintiff's department was required to conduct "time studies" where employees had to record every minute of how we spent our day.

55. On or about November 8, 2011, Plaintiff requested to go to a professional development class that was being offered, but Plaintiff was refused.

56. Maurer informed Plaintiff that her two male partners, Mike and Jeff (*who were being paid more than Plaintiff and one of whom had*

*been the subject of the original complaint*) were "swamped". In fact they were not.

57. The day before Plaintiff requested time off for professional development these two individuals told her that they had nothing to do and were "bored".

58. Meanwhile, Plaintiff and her co-worker Renee were working almost non-stop.

59. After Plaintiff complained and filed the first charge, her professional development hours were significantly curtailed.

60. In or around mid-November of 2011, Plaintiff complained again about a clearly hostile, harassing and retaliatory environment and Plaintiff told Maurer that it appeared that everyone was out to get her.

61. Plaintiff told Maurer that she was planning to make another complaint to Human Resources and Maurer informed Plaintiff that she should tell them that it was not her. However, it was her.

62. During the same meeting, Maurer informed Plaintiff that Lisette Ormsbee ("Ormsbee"), the Library Director, and Morris were accusing Plaintiff of violating the college's sick leave policy on a day that she requested off in December of 2010.

63. Once again, Maurer's attitude was discriminatory and retaliatory in nature.

64. Plaintiff had taken a legitimate vacation day to work on a huge final project for her meta-data class and the day was approved.

65. Maurer's attitude toward Plaintiff was clearly designed to harass her.

66. On or about November 20, 2011, Plaintiff went again to Morris of Employer Relations and complained about harassment and retaliation.

67. Of course, the Defendant's alleged investigation of Maurer's comments and treatment of Plaintiff found her actions to be non-discriminatory and non-retaliatory.

68. In or around early December of 2011, Plaintiff mentioned getting a haircut for her birthday and graduation.

69. Maurer told Plaintiff that she should get bangs because in her view Plaintiff had a "five head" and not a forehead.

70. Maruer regularly made comments about Plaintiff and her department being the "red headed step child" of the library.

71. These were offensive and inappropriate comments.

72. Plaintiff was singled out as a consequence of her appearance and immutable characteristics.

73. Because Plaintiff was graduating with her Master's Degree and because she was qualified Librarian, she requested to be added to the substitute pool of librarians.

74. Plaintiff had previously spoken to the Head Librarian who encouraged and supported this request.

75. There would have been no more money charged to the college as a consequence.

76. Plaintiff was told in or around January of 2012 that she would not be added and this caused all of the librarians to be utterly stunned by the refusal to add her to the pool.

77. Upon information and belief, in or around January of 2012, Plaintiff was the only qualified Librarian not permitted to be added to the pool.

78. Upon information and belief, Maurer was added to the pool as soon as she got her degree in 2009.

79. The act of not adding Plaintiff to the substitute pool was yet another example of retaliation

80. Furthermore, the exclusion fundamentally affected Plaintiff's career and prevented her from having the opportunity of working as a substitute librarian.

81. In or around early February 2012, Maurer met with Plaintiff to reprimand her allegedly for not doing her job.

82. She threatened Plaintiff with a National Labor Relations Board ("NLRB") charge if she continued to do certain activities which she said were not Plaintiff's job and allegedly should have been done by someone else.

83. However, the activities referenced by Maurer were those which Plaintiff had always done.

84. It was just another way of retaliating against Plaintiff.

85. Eventually, Plaintiff requested to be transferred to another manager but she had continually been refused.

86. Plaintiff also applied for three positions that she was qualified for and did not even get an interview.

87. In or around March of 2012 after Plaintiff's husband got a new job about an hour away, Plaitniff requested a new work schedule to accommodate their use of one car.

88. Plaintiff wanted to work from 7:00am to 3:30pm or from 7:30am to 4:00pm.

89. Maurer immediately said that was not possible despite a college policy that supported and allowed for Plaintiff's request.

90. Plaintiff had to find the college's policy, print it out and attempted to give it to Maurer the next day.

91. However, Maurer came out later after Plaintiff had printed it, and gave her a copy of a form to fill out that was attached to the policy.

92. Maurer attempted to refer to some college policy to support her discriminatory and retaliatory position.

93. In or around May of 2012, Plaintiff was notified of the "elimination" of her position, which was additional retaliation for her filing of the first charge.

94. Plaintiff was informed that the matter was not open for discussion and that the decision was a "completely objective one".

## COUNT I
**Sex/Gender Discrimination in Violation of Title VII**

95. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

96. The foregoing conduct by the Defendant constitutes unlawful discrimination against the Plaintiff on the basis of her sex/gender in violation of Title VII of the Civil Rights Act.

97. As a result of the Defendant's unlawful discrimination, the Plaintiff has suffered damages as set forth herein.

## COUNT II
## Retaliation in Violation of Title VII

98. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

99. The foregoing conduct by the Defendant constitutes unlawful retaliation against the Plaintiff on the basis of her engagement in protected activity in violation of Title VII of the Civil Rights Act.

100. As a result of the Defendant's unlawful retaliation, the Plaintiff has suffered damages as set forth herein.

## COUNT III
## Pennsylvania Human Relations Act ("PHRA")

101. All of the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference herein as if the same were set forth at length.

102. Defendant violated the PHRA by its discriminatory actions and retaliation against Plaitniff.

103. As a direct and proximate result of Defendant's violation of the PHRA, Plaintiff has sustained the injuries, damages and losses set forth herein.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff prays that the Court enter judgment in her favor and against the Defendant and that it enter an Order as follows:

    a. The Defendant is to be permanently enjoined from engaging in discrimination against the Plaintiff on any other basis prohibited under applicable law;

    b. The Defendant is to be prohibited from continuing to maintain its illegal policy, practice, or custom of permitting discrimination and retaliation in the workplace, and is to be ordered to promulgate an effective policy against such harassment and discrimination and to adhere thereto;

    c. The Defendant is to be prohibited from continuing to maintain its unlawful policy, practice, or custom of

    discriminating against employees and is to be ordered to promulgate an effective policy against such discrimination and to adhere thereto;

d. The Defendant is to compensate the Plaintiff, reimburse the Plaintiff, and to make Plaintiff whole for any and all pay and benefits the Plaintiff would have received had it not been for the Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. The Plaintiff should be accorded those benefits illegally withheld from the date the Plaintiff first suffered discrimination at the hands of the Defendant or its agents until the date of verdict;

e. The Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused by the Defendant's actions to the extent they are available as a matter of law;

f. The Plaintiff is to be awarded punitive damages as permitted by applicable law, in an amount believed by the

Court or trier of fact to be appropriate to punish the Defendant for its willful, deliberate, malicious and outrageous conduct and to deter the Defendant or other employers from engaging in such misconduct in the future;

g. The Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate;

h. The Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

i. Any verdict in favor of the Plaintiff is to be molded by the Court to maximize the financial recovery available to the Plaintiff in light of the caps on certain damages set forth in applicable federal law and to reflect the tax consequences thereof;

j. The Plaintiff is to be granted such additional injunctive or other relief as may be requested during the pendency of this action in an effort to ensure the Defendant does not engage –

or ceases engaging – in unlawful retaliation against Plaintiff or other witnesses to this action;

k. The Court is to maintain jurisdiction of this action after verdict to ensure compliance with its Orders therein.

l. Plaintiff demands trial by jury pursuant to Fed.R.Civ.P. 38 on all issues so triable.

Respectfully submitted,

KOLMAN ELY, P.C.

_____
Wayne A. Ely, Esquire
W. Charles Sipio, Esquire
414 Hulmeville Avenue
Penndel, PA 19047
(T) 215-750-3134 / (F) 215-750-3138

*Attorneys for Plaintiff*

Dated:   June 8, 2015